THE CITY OF LITTLE FALLS, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

Fourth Department, November 16, 1921.

Canals — Barge canal — jurisdiction of Court of Claims — city a " person " entitled to present claim for damages — claim by city of Little Falls for appropriation of streets for canal purposes necessitating relocation of water mains is private claim which Court of Claims has jurisdiction to audit — measure of damages — nominal variance in cost of pipe used in new mains.

The city of Little Falls is a " person " who legally may present a claim against the State for damages sustained by the construction of the Barge canal.

A claim by said city for damages for the appropriation by the State of public streets for Barge canal purposes which necessitated a relocation of water mains, is a just claim and in a legal sense a private claim as contemplated by section 47 of the Canal Law and section 264 of the Code of Civil Procedure, and the Court of Claims properly assumed jurisdiction to audit and allow it.

The measure of damages is the fair and reasonable expense of the removal of the water mains and the reconstruction thereof elsewhere in a most economical way and in the most available location.

Since the principal expense was the labor of relaying the mains and there is no evidence of the difference in the cost of the eight-inch pipe used in the reconstruction and of the six-inch pipe used in the property appropriated, and since the question as to the difference in price is raised for the first time on appeal, the court will regard the variance in the work as being only nominal in respect to cost.

APPEAL by the defendant, The State of New York, from an order and judgment of the Court of Claims in favor of the plaintiff, entered in the office of the clerk of said court on the 28th day of May, 1920, awarding damages to the claimant for appropriation of property by the State in the construction of the Barge canal.

*Charles D. Newton, Attorney-General [Carey D. Davie, Deputy Attorney-General,* of counsel], for the appellant.

*S. H. Newberry,* for the respondent.

DAVIS, J.:

In the construction of the Barge canal through the city of Little Falls the State by a notice of appropriation served Octo-

ber 30, 1908, took for a part of the canal location Bellinger street and a portion of Southern avenue, public streets of the city.

In those streets at the time were water mains and a fire hydrant, a part of the municipal water system located therein by permission of the Legislature. The southern portion of the city lying across the canal was supplied by these mains. In deference to the sovereign power of the State, the city proceeded to remove a part of its mains from these streets and make its water connections with the southern part of the city, thus interfered with and interrupted, by an available route through other streets. That portion of its mains which it did not remove were broken up and taken out in the work of excavation for the canal.

The city made claim for its damages before the Court of Claims under section 47 of the Canal Law. While there is and can be no question that damage has been sustained by the city, it is met with the objection on the part of the State that the Court of Claims has no jurisdiction, because the claim is a public and not a private one, and that the jurisdiction of the court is confined to the audit and allowance of private claims only, under section 264 of the Code of Civil Procedure.

It will be observed that section 47 of the Canal Law provides that " There shall be allowed and paid to every person sustaining damages from the canals   *   *   *   the amount of such damages to be ascertained and determined by the proper action or proceedings before the Court of Claims." (See, also, Laws of 1915, chap. 494, amdg. said § 47.) If the city is a " person," it may prosecute such claim. In the General Construction Law, section 37, it is said: " The term person includes a corporation and a joint-stock association. When used to designate a party whose property may be the subject of any offense, the term person also includes the State, or any other State, government or country which may lawfully own property in the State." (See, also, Gen. Mun. Law, § 2.) It has been held that although municipal corporations are not designated by name, they are included in the term " person " employed in the statute, which is defined by section 37 of the General Construction Law as including corporations and joint stock companies. (*Ackert* v. *City of New York,* 156 App. Div. 836, 840.) And heretofore the Court of

Claims, with a fair degree of consistency, has held that a municipal corporation is a " person," and the doctrine seems not to have been challenged. (*O'Bryan* v. *State of New York,* 68 Misc. Rep. 618; revd. on other grounds and new trial granted, 148 App. Div. 542; *Village of Seneca Falls* v. *State of New York,* 115 Misc. Rep. 35; *contra, Town of New Lebanon* v. *State of New York,* 111 id. 310.) We may say, therefore, that the city of Little Falls is a *person* who may legally present a claim for damages sustained from the construction of the Barge canal.

We think, however, that the judgment may be sustained on even broader grounds. As was said by Judge Folger in *Maxmilian* v. *Mayor* (62 N. Y. 160, 164): " There are two kinds of duties which are imposed upon a municipal corporation: One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public and is used for public purposes. * * * The former is not held by the municipality as one of the political divisions of the State; the latter is. In the exercise of the former power, and under the duty to the public which the acceptance and use of the power involves, a municipality is like a private corporation, and is liable for a failure to use its power well, or for an injury caused by using it badly."

It is well known that the private, ministerial or administrative powers, as distinguished from the purely governmental functions of a city, have been greatly increased by legislative grant in modern times. Cities and villages have been permitted for the convenience and welfare of their inhabitants to engage in business enterprises formerly conducted only by private corporations, in distributing water, gas and electricity to their inhabitants, and in sometimes furnishing transportation on street car lines and otherwise. They may, with respect to their property, enter into contracts just as may a private corporation and incur liability (*Port Jervis Water Co.* v. *Village of Port Jervis,* 151 N. Y. 111; 28 Cyc. 306); and may sell and convey their property unless held as trustee, like any

private corporation. (*People* v. *City of Albany,* 4 Hun, 675.) It has been held that when municipalities undertake the functions of transportation and business corporations, they must, in the absence of legislative exemption, conform to the same rules as those applied to other corporations and individuals under the same circumstances. (*Powers* v. *Village of Mechanicville,* 163 App. Div. 138, 143.) In operating a system of supplying water to individual customers on payment of rates, the municipality acts not in a governmental capacity, but as the proprietor of a corporate business, wherein it is subject to many of those principles of liability which would apply to a private individual in the conduct of a similar business. (*Oakes Mfg. Co.* v. *City of New York,* 206 N. Y. 221.) A municipal corporation in operating a water works system and distributing water for a price to its inhabitants, acts in its private or proprietary capacity, in which it is governed by the same rules that apply to a private corporation so acting. (*Canavan* v. *City of Mechanicville,* 229 N. Y. 476. See, also, *Stubbs* v. *City of Rochester,* 226 N. Y. 516; 28 Cyc. 299–301.) The cases last cited deal with the liability of a city for negligence or failure to perform a duty in connection with such municipal business enterprises. They deny to the city that exemption which it might claim if it was exercising a public, governmental function. It would be a strange kind of justice, unknown to our system of jurisprudence, if a municipality were to be held to the same liability as a private individual or corporation on its contractual or tort obligations, and yet should be denied the right to assert and enforce similar claims against others in our courts, because it had not the standing or parity of right enjoyed by an individual or a corporation.

We have not here a case similar to *Cayuga County* v. *State* (153 N. Y. 279). That was a claim for the expenses incurred in the courts for the prosecution of inmates for crimes committed in Auburn State Prison, who were wards of the State and not residents of Cayuga county. The judicial system is, of course, purely a governmental function, and the expenses incurred in conducting courts are borne by general taxation, constituting a public expense, and that character would attach to a claim therefor presented against

the State; and it was in that sense in an illustrative way in the course of his opinion, Chief Judge ANDREWS defined private and public claims.

The ownership by a city of property of this character may be so connected with the public interest and benefit that property may be exempted from taxation (*City of Rochester* v. *Town of Rush*, 80 N. Y. 302); or the municipality may be exempted from liability for nonuser or misuser of the powers granted to it, where it fails to use reasonable diligence in protecting the property of its citizens from fire. (*Springfield Fire Ins. Co.* v. *Village of Keeseville*, 148 N. Y. 46.) But such principles are far remote from the doctrine that the municipality in its private and administrative capacity may become liable, and may exact compensation for liability from others, in dealing with its property. If it were a private corporation which owned this water works, there would be no question as to the liability of the State to make compensation for the appropriation of the property. We can see no reason for withholding compensation simply because the owner is a municipal corporation. In one case the ownership of the property is private though devoted to public purposes, over which the State may exercise police powers; in the other, the ownership is in the private capacity of the municipality, but connected with the public interest and benefit, with the police powers in relation thereto largely delegated to the city.

We conclude, therefore, that the claim was just, and in a legal sense was a private claim as contemplated by section 47 of the Canal Law and section 264 of the Code of Civil Procedure, and that the Court of Claims properly assumed jurisdiction to audit and allow it.

The remaining question is the measure of damages to be applied. The city made proof of the fair and reasonable expense of the removal of the pipe line and the reconstruction elsewhere in the most economical way, and in the most available location. The court adopted that measure in its findings, and found that the fair and reasonable value of the pipe line taken over by the State, and the work, labor and material employed by the claimant in building the new portion of its water main, necessitated by the appropriation of its former line, was $1,826.33. This was the actual cost of reconstruction,

the figures having been submitted to a representative of the State and not questioned on the trial.   Appellant's counsel claim the wrong measure was adopted.

The right to use this street, and the mains laid in the street were, by the act of the State, permanently appropriated and destroyed.   It followed as a natural consequence that if the municipality was to serve its citizens and furnish water for fire protection and domestic consumption, it must lay its mains elsewhere.   It selected the most suitable and available route, and laid its mains so that it was able to maintain its service as it had before.   This was not a case where there had been an injury to or destruction of tangible real property, like lands or buildings, and the damages could be measured by a comparison of the value of the property taken, injured or destroyed, immediately before and immediately after the act.   The rights of the city to have its main in this particular street had no market value, except that which might rest in conjecture and speculation.   In such unusual cases, it is necessary to abandon the stereotyped rules as to the measure of damages, which are not applicable, and take proof of damages in the best and most practicable and most reasonable way.   (*Jackson Architectural Iron Works* v. *Hurlbut,* 158 N. Y. 34; *Paxson Co.* v. *Board of Chosen Freeholders,* 201 Fed. Rep. 656; *People's Gas & Electric Co.* v. *State of New York,* 105 Misc. Rep. 231; modified and affd., 189 App. Div. 421; affd., 231 N. Y. 520; 17 C. J. 886.)

It appears that in relaying its mains the city used an eight-inch pipe.   In the property appropriated there was only a six-inch pipe.   Undoubtedly, the principal item of cost to the city was the labor of relaying the main in the streets. There is no evidence before us of the difference in the cost of the two sizes, and as the counsel for the appellant has raised the question for the first time here as to this item of difference, we will regard the variance in the work of reproduction as being only nominal in respect to cost.   (*Paxson Co.* v. *Board of Chosen Freeholders, supra.*)

The order and judgment should be affirmed, with costs.

All concur.

Judgment affirmed, with costs.